# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAWLE GERARD SUITE, PRO SE
A#A 018-139-760
PETITIONER

V.

Chistopher J. LaRose, Warden of Moshannon Valley Processing Center,
MR. Jamieson WARDEN OF FDC Philadelphia, R. MORREL, ICE Supervising
Agent.

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

## INTRODUCTION

Petitioner, RAWLE GERARD SUITE, has been detained by Immigration and Custom enforcement ("ICE") since January 12th, 2024, following the completion of a Federal Sentence. Petitioner is currently held under 8 U.S.C. § 1226(c) without the opportunity for a bond hearing dispite the right to due process under the constitution. The continued detention, given the prolonged nature of his confinement and the government's inability to remove him expeditiously, violates his due process rights under the Fifth Amendment that clearly entitles Aliens to due process of law in deportation proceedings. He now petitions for relief pro se

This petitioner challenges the constitutionality of Petitioner's prolonged detention under Santos V. Warden of ~~both~~ Pike County Correctional facility (965 F. 3d 203), arguing that each factor established in the Santos framework weighs in favor of release.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 2241 to review Immigration related detention when it violates consitutional rights. Venue is proper as petitioner is now detained at FDC Philadelphia 601 Market Sheet, Phil Pa 19106.

PARTIES

1. Petitioner: Rawle Gerard Suite (A# A018139760), an individual currently detained by ICE at the FDC Philadelphia, Pa 19105 a make shift facility inside of BOP under the auspices of renting beds. A make shift facility under the rules and regulations of BOP, "De Ja Vu" Thus, Petitioner respectfully argues this recent transfer to be an impermisable hold, unconstitutional and should be vacated as a matter of law especially considering he has been detained for over 15 months — well beyond the time that the Third Circuit indicates could violate due process. See German Santos, 965 F.3d at 213 (declining to set a bright line rule but indicating that "detention becomes more and more suspect after five months." (Quoting Diop, 656 F.3d at 233). See exhibit "A"

2. Respondent: Christopher J. LaRose, Warden of Moshannon Valley Processing center, Pennsylvania, Warden Jamieson of FDC Philadelphia, Philadelphia, Pa 19105 and Mr. R. Morel, ICE/DHS Supervising Agent.

FACTUAL BACKGROUND

1. Petitioner was taken into ICE custody on January 12, 2024, AFTER serving a federal sentence. He is being detained under 8 U.S.C. § 1226 (c), which mandates detention without a bond hearing for certain criminal convictions.

2. IN "NTA" removal proceedings DHS Alleges, First Petitioner is not a citizen or national of the UNITED STATES. Second Petitioner is a native of TRINIDAD AND TOBAGO; Third Petitioner was admitted to the United States at New York City, New York on or about January ~~January~~ ~~1969~~ 1969, as a lawful permanent resident; Fourth Petitioner was, on June 7, 2018 convicted in the United States District Court, Central District of California for the offense of Wire Fraud, in violation of title 18 U.S.C.

3. ALLEGATIONS ONE THROUGH THREE /S CONCEDED AND TRUE HOWEVER, ALLEGATIONS No. 4 PETITIONER OBJECTS TO AGGRAVATED FELONY CHARGE AS A MATTER OF LAW, STATUES AND IN ACCORDANCE WITH THE IMMIGRATION ACT.

4. Petitioner's case after outrageous delay's was transferred from Moshannon valley processing center to FDC Philadelphia, (A makeshift facility.) UNDER THE Auspices of Tenting bed's — Subjecting petitioner to BOP rules and regulations and or multiple punishment for the same offense, and or his alleged Aggravated felony.

5. Petitioner has been subjected to prison-Like conditions, facing stabbings, gang violence, drug trafficking, Medical — Negligence, and staff abuse. IN the interest of Justice and in the interest of the most basic rights this case is ripe for — adjudication and or determination.

Legal ARGUMENTS UNDER SANTOS FRAMEWORK
In Santos, the Third Circuit outlined Four Factors for determining whether detention under §1226(c) becomes uncastitutionally prolonged:

1. Length of Detention
Petitioner has been detained for 16 months since January 12, 2024 this far exceeds the Six-Month threshold identified by the third — Circuit in Santos, triggering heightened Scrutiny of the constitutionality of his continued detention.

© peachprintable.com

## 2. Reason FOR Prolonged Detention

IJ Tamara Wilson's actions have contributed to the unreasonable delay in Petitioner's case. E.G. IJ undermined Joseph Hearing when it produced paperwork approving A Joseph hearing one week after conducting A Joseph hearing. Moreover, IJ and DHS did not meet the legal standard and or failed to meet the clear and convincing standard and thus VIOLATED the due process clause by making a determination Not based on Flight and danger to the community. The record is unequivocal IJ made a determination on May 20th, 2024 to not hold the government to their burden of proof and or failed to establish law already established. IJ adopted instead that the bond hearing should be conducted based on DHS presentation of case law while ignoring the Due process clause, The legal standing for A Joseph hearing and or applying the legal standard Nescessary to safeguard Petitioner's liberty interest.

This Honorable Court is bound by law and not statutory interpretation where the statutory is clear judicial inquiry is complete. Court should take Notice there have been unusual or unnecessary delay's throughout this removal proceedings. E.G. on or About May 2024 the record will reflect IJ failed to appear for scheduled court date, AND ARBITRARILY PUSHED court DATE 3 months out to August duplicating same behavior in August pushing court date another 3 months out to November for No good reason.

## 3. Conditions of Detention

Petitioner has been held in harsh, Prison like conditions at Moshannon — Valley and now placed back into BOP deprived of liberty without due process. thus, in violation of trespassing on Petitioner's 11th Amendment protection. the evil sought to be avoided is A second prosecution for the same offense after serving (amounting to double Jeopardy.) the imposed sentence. Petitioner Seeks protection from coercive and medical treatment. Finally, the longer Petitioner's detention extends, the more weight must be given to the conditions of his confinement. German Santos, 965 F.3d at 211; Chavez-Alvarez, 783 F.3d at 475.

4. Likelihood of Removal

First Petitioner's detention is likely to continue for a "significant, undetermined amount of time." Soriano v. Sabol, 183 F. supp. 3d 648, 655 (M.D. Pa-2016). Petitioner has been litigating his removal case since January 2024 and his proceedings are not likely to end given the complicated nature of his claims. Litigating his case will likely subject him to continued mandatory detention for the foreseeable future, absent an individualized bond hearing. Petitioner's detention is unlikely to "end soon."

5. Conditions of Confinement Affecting due process:

While in the official custody of DHS/ICE, this petitioner lacks adequate Medical Care required under his confinement (see EXHIBIT 1.) —
Notwithstanding Petitioner's access to the Courts has been constitutionally ~~bing~~ delayed and or frustrated, in direct violation of his First, Fifth and Fourteenth Amendment rights, thus further undermining due process rights, thus further undermining due process rights as constitutionally required by the Constitution of the United States, where this petitioner has a liberty interest because during the course of the alleged constitutional violation, this Petitioner, remains detained. This alleged constitutional violation does not serve any penal interest, in absconding of detainees, facility safety concerns, and or interests of the public. Court should recognize the following

PRO SE STATUS

Petitioner is proceeding pro se in this matter and has made every effort to represent himself adequately and hereby invokes the powers and protections of BOAG v. MACDOUGAL, 454 U.S. 364. 70 L-Ed, 2D 551, 102 S. Ct. 700 (1982).

RELIEF REQUESTED

1. ISSUE AN ORDER FOR PETITIONER'S IMMEDIATE RELEASE FROM CUSTODY
2. ALTERNATIVELY ORDER AN INDIVIDUALIZED BOND HEARING AT — WHICH THE GOVERNMENT MUST JUSTIFY PETITIONER'S CONTINUED DETENTION.

PETITIONER ARGUES THE FOLLOWING...

## ARGUMENTS V111

Despite Respondent being an alien whom the government seeks to remove, has a right to due process under the Constitution. See Demore, 538 U.S. 510,523 (2003) ("'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. '") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993». "Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty" that the Due Process Clause protects. Zadvydas, 533 U.S. at 690. This fundamental due process protection applies to all non-citizens present in the United States, including removable and inadmissible non-citizens. See id. at 721 (Kennedy, J., dissenting); see also Rosales-Garcia v. Holland, 322 F.3d 386, 410 (6th Cir. 2003) ("government treatment of excludable aliens must implicate the Due Process Clause of the Fifth Amendment"). As such, detention pursuant to immigration proceedings - which are civil, not criminal - is constitutionally permissible only in "certain special and 'narrow' nonpunitive 'circumstances.'" Zadvydas at 690 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the [detained] individual's constitutionally protected interest in avoiding physical

restraint." (Internal quotations omitted). Id. at 690. In the immigration context, the

Supreme Court has recognized only two valid purposes for detaining non-citizens:

to mitigate the risks of danger to the community and to prevent flight. Id. at 690-

91; see also Demore, 538 U.S. at 515, 527-28.

Prolonged Detention Without a Bond Hearing under 1226(c) Violates Due Process,

and due process requires the government to provide bond hearings to non-citizens

facing prolonged detention. "The Due Process Clause foresees eligibility for bail as

part of due process" because " [b]ail is basic to our system of law." 138 S. Ct. at

862 (Breyer, J., dissenting) (internal quotations and citations omitted). While the

Supreme Court upheld mandatory detention under § 1226(c) in Demore, it did so

based on the petitioner's concession of deportability and the Court's understanding

that detentions under § 1226(c) are typically "brief." Demore, 538 U.S. at 522 n.6,

528. Where a non-citizen has been detained for a prolonged period, due process

requires an individualized determination that such a significant deprivation of

liberty is warranted. Id. at 532 (Kennedy, J., concurring) ("individualize

determination as to his risk of flight and dangerousness" may be warranted "if the

continued detention became unreasonable or unjustified"); see also Jackson v.

Indiana, 406 U.S. 715, 733 (1972) (detention beyond the "initial commitment"

requires additional safeguards); McNeil v. Dir., Patuxent Inst., 407 U.S.

245, 249-50 (1972) ("lesser safeguards may be appropriate" for "short term confinement"); Hutto v. Finney, 437 U.S. 678,685-86 (1978) ("the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards"). Following Zadvydas and Demore, every Circuit Court of Appeals to confront the issue has found that non-citizens subject to unreasonably prolonged mandatory detention require a bond hearing - either pursuant to the Due Process clause or to avoid serious constitutional concerns. See Sopo v. Us. Attorney Gen., 825 F.3d 1199 (11th Cir. 2016), vacated No. 14-11421,2018 WL 2247336 (11th Cir. May 17,2018) (addressing detention under 8 U.S.C. §1226(c)); Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016) (same); Lora v. Shanahan, 804 FJ d 601(2d Cir. 2015), vacated 138 S. Ct. 1260 (2018) (same); Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), rev'd sub-nom. Jennings v. Rodriguez, 138 S. Ct. 830,2018 WL The statistical information provided by the Government and relied upon by the Supreme Court in Demore was in 2016 revealed by the Solicitor General to be inaccurate, and the true average length of immigration detention was shown to be much longer. See Jennings, 138 S. Ct. at 869 (Breyer, J., dissenting) ("The Government now tells us that the statistics it gave to the Court in Demore were wrong. Detention normally lasts twice as long as the Government then said it did .... thousands of people here

are held for considerably longer than six months without an opportunity to seek

bail."). 1054878 (Feb. 27, 2018) (§§ 1226(c), 1225(b)); Diop v. ICE, 656 F.3d 221

(3d Cir. 2011) (§1226(c)); Dioufv. Holder (Diouf 11),634 F.3d 1081 (§ 123 1 (a));

Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003) (§ 1226(c)) (requiring release when

mandatory detention exceeds a reasonable period of time).

The Supreme Court in Jennings held that the Ninth Circuit erred by interpreting

Sections 1226 (c) and 1225(b) to require bond hearings as a matter of statutory

construction. 138 S. Ct. at 843-44. However, the Court left for the lower courts to

decide what process the Constitution requires to ensure that prolonged immigration

detention is in fact reasonable. Id. at 851. Prior to Jennings, the Second Circuit

concluded that "in order to avoid the constitutional concerns raised by indefinite

detention, an immigrant detained pursuant to section 1226(c) must be afforded a

bail hearing before an immigration judge within six months of his or

her detention." Lora, 804 F.3d at 616. t. 1260 (2018). The Supreme Court vacated

and remanded Lora as it rejected the application of the canon of constitutional

avoidance to the immigration statutes. Although the Second Circuit has since

dismissed Lora as moot, it remains "strong persuasive authority." See Sajous v.

Decker, No. 18 Civ. 2447, 2018 WL 2357266, at *6-7 (S.D.N.Y. May 23,2018)

(citing Brown v. Kelly, 609 F.3d 467, 476-77 (2d Cir. 2010)).

While the Lora court technically interpreted the relevant statute to find that individualized hearings were required after six months of mandatory detention, it engaged in significant constitutional analysis to reach that holding. 804 F.3d at 613,615 ("[Lora] argues to this Court that his indefinite detention without being afforded a bond hearing would violate his right to due process. We agree."); see also Sajous, 2018 WL 2357266 at *9. The conclusion that due process requires "some procedural safeguard in place for immigrants detained for months without a hearing," Lora, 804 F.3d at 614, is buttressed by significant persuasive authority in this jurisdiction. See e.g., Faure v. Decker, No. 15 Civ. 5128, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19,2015) (petitioner's "continued detention [under 1226(c)] without a bond hearing violates the Due Process Clause"); see also Minto v. Decker, 108 F.Supp.3d 189, 195-96 (S.D.N.Y. 2015) (due process requires individualized bond hearing to determine whether petitioner's detention [under 1226(c)] was justified); Gordon v. Shanahan, No. 15 Civ. 261, 2015 WL 1176706, at *3-5 (S.D.N.Y. Mar. 13, 2015) (same); Bugianishvili v.McConnell, No. 15 Civ. 3360,2015 WL 3903460, at *9 (S.D.N.Y. June 24, 2015) (same); Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 544-50 (S.D.N.Y. 2014) (same); see also Birch, 2018 WL 794618, at *4 (same for 1225(b) petitioner); Alberto v. Decker, No. 17 Civ. 2604, 2017WL 6210785, at *7 (S.D.N.Y. Nov. 21,2017) (same for 1225(b) petitioner); Osias v. Decker, 273

(9th Cir. 2011). Further, due process requires that an individual's ability to pay and alternative conditions of release to be taken into account when setting a bond. United States v. Salerno, 481 U.S. 739 (1987). The Supreme Court has placed the burden on the government to establish the need for ongoing civil detention in many different contexts. See, e.g., Cooper v. Oklahoma, 517 U.S. 348,363 (1996) ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.") (citation and quotation marks omitted); Foucha, 504 U.S. at 81-83 (striking civil insanity detention statute because it placed the burden on detainee to prove eligibility for release); Kansas v. Hendricks, 521 U.S. 346, 368 (1997) (upholding involuntary civil commitment of certain sex offenders but requiring "strict procedural safeguards" including a right to a jury trial and proof beyond a reasonable doubt); Salerno, 481 U.S. at 750-52 (upholding federal bail statute permitting pretrial detention where statute required

### HEALTH AND HUMANITARIAN

Despite multiple comorbidities diagnose by FCI Berlin, NH medical staff. Despite being upgraded to level 2 and 3. Despite Respondents claim that the infliction of pain and emotional distress was at all times an eight-amendment violation to the

United States Constitution. Respondent met and exceeded burden of proof by using FCI Berlin, NH medical encounters that corroborates Respondent suffers from pre diabetes, high cholesterol, hypertension 3, a BMI reading of 35, enlarged prostate, late osteoporosis, lipoma, hernia, sleep apnea triggering psyche. Meds notwithstanding dental infection, loss of hearing and multiple surgeries needed. Respondent's list of medicines (little less than a dozen.) is intension with DHS NTA report, record also reflects a telemedicine cardiology consultation that reflects Respondent is indeed a high risk. The American college of cardiology (Acc) using their aced risk calculator and/or estimator, a conclusionary mathematical assessment was performed. Accordingly, a risk reading, ranging from 3% for low risk, 7.4 for intermediate, 20% for high risk. The optimal reading is 6.3%. Respondent reading conducted at FCI Berlin came in at 26.2 %, report is already listed at the District Court and once again is in tension with DHS report that Respondent is in good health. (See civil complaint.)

Moreover, the above mention goes to the heart of "CAT" claim and or cruel and unusual punishment by virtue of acquiescent to torture by the Government of Trinidad and Tobago.

## CONCLUSION

For the foregoing reasons, this Court should grant Respondent's request for a determination that **he** is not properly included under the mandatory detention statute and order an immediate bond hearing where the government bears the burden of showing that **his** continued detention is necessary.

**Date:** May 9th 2024                 Respectfully Submitted,

Date: May 9th 2025                 Finally Submitted

Mackey
Glenn
786-955-3889



NOTE; <u>ISSUES ARE STILL IN DISPUTE</u> ... Petition of coram NOBIS requesting the ct To Vacate sentence due to A Fundamental defect which inherently resulted in a complete Miscarriage of Justice is before sentencing court to correct a grave injustice as it applies to this case.

RAWLE GERARD SUITE

A#

555 GEO DRIVE

PHILIPSBURG, PA 16866

**DETAINED**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Rawle Gerard Suite, <br>     Petitioner, <br><br>     v. <br><br> United States of America <br>     Plaintiff, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Case No. 8:16-cr-000069-JVS**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| Rawle Gerard Suite, | ) | |
| Petitioner, | ) | |
| | ) | **Case No. 8:16-cr-000069-JVS** |
| v. | ) | |
| | ) | |
| United States of America | ) | |
| Plaintiff, | ) | |

---

### ALL WRITS ACT/WRIT OF ERROR CORAM NOBIS 28 U.S.C. §1651

---

## I. INTRODUCTION

Petitioner, *ProSe*, petitions for a writ of error coram nobis asking this court to vacate his [date], conviction, due to ineffective assistant of counsel, a fundamental defect which inherently resulted in a complete miscarriage of justice. Counsel neither inquired nor investigated petitioners immigration status, nor did counsel advise petitioner of the adverse consequences his plea and conviction would have on his status in the United

States. ~~Petitioner did not seek the advise of seperate immigration attorney because was unaware of the consequences of conviction.~~  The extent of counsel's deficient performance, misleading advise, and collateral consequences, caused significant injury and led to judicial proceedings of disputed reliability.  As is relevant here, "a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense."

## II. STATEMENT OF NON-WAIVER

The errors alleged in this case have not been waived because they are the result of ineffective assistance of trial counsel, in violation of Petitioners' Fifth, Sixth, Eighth and Fourteenth Amendments Rights.  Petitioner suffered substantial prejudice, unjustified, deliberate and purposeful prosecutorial delays to gain tactical advantage, ignoring Petitioners' assertion of Speedy Trial Act and right to bail.[1]  Additionally, Petitioner has not 'intelligently and knowingly' waived the issues complained of in this motion.  If deemed to be waived, Petitioner asserts that it is within the interests of justice that Petitioner be granted post-conviction proceedings.

## III. BACKGROUND

On May 25, 2016, a grand jury returned a four-count indictment charging Petitioner with wire fraud in violation of 18 U.S.C. § 1343 relating to an investment scheme run through a purported commodities trading program, which Petitioner allegedly operated.  On June 5, 2017, Petitioner entered an open plea to all four counts, per the advise of counsel, Mr. Edward M. Robinson, Esq., and the court accepted the plea. CR 93  Prior to sentencing, Mr. Robinson was removed as counsel and Petitioner proceeded, *Pro Se*, for sentencing, but was later represented by counsel. CR 110; 122.  At sentencing Petitioner was sentenced to 121 months in federal prison. CR 136.  Petitioner appealed his sentence, and it was affirmed by the Ninth Circuit Court of Appeals.  CR 136; 168; *United States v. Suite*, 792 F. App'x 485 (9th Cir. 2020)  Petitioner then filed a *Pro Se*, motion to withdraw his guilty plea. CR 161.  In that Pro Se, motion, Petitioner argued his plea was involuntary and  unintelligent because Mr. Robinson, provided ineffective assistance of counsel by providing misleading information about his plea. This motion was not heard on its merits, but summarily denied. On [date], petitioner finished his federal sentence

---

1    Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2D 101 (1972)

3

and was subsequently released to ICE custody.  On [date], petitioner filed a Mandamus motion, which was summarily denied without hearing the merits of the petition and denied certificate of appealability.

Because petitioner is not a citizen of the United States, his conviction subjects him to deportation.  Petitioner alleges he first became aware of these consequences [crud] ....Petitioner contends his trial attorney in the criminal case before this court neither inquired nor investigated his immigration status, nor did counsel advise him of the adverse consequences his plea and conviction would have on his status in the United States. Id. at 2, 6; Suite Decl. ¶¶ 21-24. Petitioner says he did not seek the advice of a separate immigration attorney because he was unaware of the consequences of his conviction. Suite Decl. ¶ 23. If he had been fully apprised of the consequences, petitioner asserts he would have held out for a plea deal protecting him against deportation or taken his case to trial.

Petitioner came to the United States in [date] with his parents and siblings, when he was eight years old; in [date] he obtained status as a Lawful Permanent Resident.  He has lived continuously in the United States since first arriving. He obtained his education in the United States and forged a successful career as a commodities trader and programmer during this time.  Moreover, due to their declining health, petitioner serves as caretaker to his ~~parents;~~ IN LAWS he avers they would not be able to live on their own without petitioner's daily assistance. ~~Id. ¶¶ 12-13.~~ If deported, petitioner declares not only will he lose the life he has created in the United States, the only country he has called home since age eight, but petitioner's family will also lose their primary sources of support, including through the loss of their family businesses. See DECLARATIONS.

## IV. LEGAL STANDARD

"[T]he writ of error *coram nobis* is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015) (alteration in original) (internal quotation marks omitted). "Specifically, '[t]he writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and egregious legal errors." *Estate of McKinney By & Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995)

(alteration in original) (some internal quotation marks and citations omitted). Unlike its counterpart 28 U.S.C. § 2255, which provides relief to a petitioner in custody, in the midst of serving his federal sentence, a writ of error *coram nobis* offers relief "when the petitioner has served his sentence and is no longer in custody." Id. (citing *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994)).

A *coram nobis* petitioner bears the burden of showing he is entitled to relief. *Chan*, 792 F.3d at 1153. To do so, he must show: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Estate of McKinney*, 71 F.3d at 781-82 (internal quotation marks omitted).

*possibly delete*

[*Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987); see also *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005); *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002). In reviewing a motion for coram nobis relief, a federal court is required to hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See 28 U.S.C. § 2255(b); *United States v. Taylor,* 648 F.2d 565, 573, n. 25 (9th Cir. 1981) (stating that "[w]hether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions."). In deciding whether a § 2255 movant is entitled to an evidentiary hearing, the district court should determine whether, accepting the truth of movant's factual allegations, he could prevail on his claim. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994). The court may deny an evidentiary hearing on a § 2255 motion "if the petitioner's allegations, viewed against the record, fail to state a claim or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (citations omitted).]

## V. DISCUSSION

Petitioner contends the circumstances of his conviction and impending inevitable deportation satisfy each element of the *coram nobis* test and therefore warrant relief. Petitioner as explained below, in analyzing the four prongs articulated in *McKinney*, this court should find petitioner satisfies his burden to justify granting *coram nobis* relief.

### *A. More Usual Remedy Unavailable*

A petitioner satisfies this first prong "by establishing that he is not in custody and, as a result, not eligible for habeas relief or § 2255 relief." *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005), opinion amended on reh'g, No. 03-50315, 2005 U.S. App. LEXIS 14813, 2005 WL 1692492 (9th Cir. July 21, 2005), and abrogated on other grounds by *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). Here, petitioner was sentenced on [date], and released from federal custody that same day having served by that point the time the parties agreed upon. (order of release from custody pursuant to sentence of time served). Because petitioner is no longer in custody and his federal sentence has been completed for some time, *coram nobis* relief is the only remedy available to him. The first prong is satisfied.

### B. Reasons for Not Attacking Conviction Earlier

There is no statute of limitations applicable to coram nobis relief, *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994); however, a petitioner must still "provide valid or sound reasons explaining why [he] did not attack [his] sentence[] or conviction[] earlier," *Kwan*, 407 F.3d at 1012. While there is no clear definition of what constitutes a "sound" reason, "courts have denied relief on this ground where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ." Id. at 1013. Coram nobis relief must be denied where a petitioner fails to show he exercised due diligence in filing his petition. *United States v. Indelicato*, No. CR-85-0078-EMC, 2015 U.S. Dist. LEXIS 116477, 2015 WL 5138565, at *2 (N.D. Cal. Sept. 1, 2015) (citing United *States v. Riedl*, 496 F.3d 1003, 1007 (9th Cir. 2007)), aff'd, 677 F. App'x 428 (9th Cir. 2017).

Here, petitioner asserts he first became aware of the deportation consequences of his conviction in [date], since which petitioner sought relief by exhausting his administrative remedies available to him at the time. When he was released to ICE, he was then assigned an immigration court date in Elizabeth, New Jersey, after which he "worked diligently" to have his case transferred to the immigration court in Orange County, California. It was not until after the Mandamus matter was denied, and after extensive research and investigation did petitioner become aware of the possibility of seeking relief by way of *coram nobis*. Shortly thereafter, on or about December 20, 2024, petitioner *ProSe* filed the instant petition, requesting *coram nobis* relief. Petitioner contends he had no reason to suspect he was subject to deportation prior to his encounter

with immigration authorities in [date], and the government is not prejudiced by the delay, if any, in his filing his petition here.

The court should find no disqualifying delay here. On the one hand, there was a roughly [time]-year delay between when petitioner first learned of his possible deportation from the federal authorities and when the petition was filed. On the other hand, petitioner did not learn of the possibility that he could seek *coram nobis* relief until he sought *extensive legal research* immigration counsel in 2024; who, after his own investigation, advised petitioner of the *learned of* potential availability of such relief. (explaining timeline of petitioner's immigration case and delay typical in immigration proceedings). Shortly thereafter, petitioner filed the instant petition within a reasonable period given the investigation petitioner needed to conduct. This chronology is unlike the scenarios in which courts have found unjustified delay. See, e.g., *Riedl*, 496 F.3d at 1007 (finding delay where petitioner, inter alia, provided no explanation why she failed to seek relief prior to deportation); *Maghe v. United States*, 710 F.2d 503, 503 (9th Cir. 1983) (providing no justification for 25-year delay in seeking post-conviction relief);{2020 U.S. Dist. LEXIS 10} *Kroytor v. United States*, No. 2:03-CR-00379-JAM-CKD-1, 2019 U.S. Dist. LEXIS 58593, 2019 WL 1488740, at *5 (E.D. Cal. Apr. 4, 2019) (finding seven years unreasonable delay, but where petitioner waited that period of time between first becoming aware of immigration consequences of his conviction and retaining legal counsel for purpose of investigating possible collateral relief), report and recommendation adopted, No. 2:03-CR-379 JAM-CKD, 2019 U.S. Dist. LEXIS 103676, 2019 WL 2546930 (E.D. Cal. June 20, 2019). Indeed, "[t]he law does not require [petitioner] to challenge his conviction at the earliest opportunity, it only requires [him] to have sound reasons for not doing so." *Kwan*, 407 F.3d at 1014. Here, petitioner's reasons for delay are sound and uncontroverted. See Supp. Suite Decl. ¶ [#] ("I actively pursued relief in my case as soon as I learned of the potential consequences and remedies-from seeking immigration counsel and advice, seeking administrative relief through post conviction §2255, Mandamus motion, and filing the writ.")

In sum, there is nothing in the record to suggest petitioner did not exercise reasonable due diligence in pursuing *coram nobis* relief, is attempting to abuse the writ process or seeking to prejudice the government in any way. Petitioner provides sound reasons for not seeking relief sooner and so satisfies *McKinney's* second prong.

*C. Adverse Consequences: Article III Standing*

7

To meet the constitutional minimum of Article III standing, a petitioner must show: (1) he suffered an "injury in fact," which is the invasion of a "legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of[,]" and (3) it must be "likely" that a favorable outcome will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and quotations omitted). "In the immigration context, a sufficient case or controversy exists when a lawful resident's immigration status is revoked and he becomes removeable." *United States v. Hirchedd*, No. 2:99-CR-309-KJD, 2018 U.S. Dist. LEXIS 200711, 2018 WL 6182052, at *4 (D. Nev. Nov. 27, 2018) (citing *Padilla*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284; Kwan, 407 F.3d at 1014), appeal dismissed, No. 18-17355, 2019 U.S. App. LEXIS 16425, 2019 WL 2446994 (9th Cir. May 31, 2019).

Here, the threat of petitioner's deportation satisfies Article III standing. Petitioner has been a Legal Permanent Resident in the United States for many years.  Because his conviction conduct involved wirefraud and amounted to aggravated felonies, those offenses rendered him removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) and (a)(2)(B)(i).   Under 8 U.S.C. § 1227(a)(2)(A)(iii), any noncitizen "who is convicted of an aggravated felony at any time after admission is deportable." An aggravated felony is defined as, inter alia, an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). To determine whether the loss amount exceeds that threshold, one must look "to the specific circumstances surrounding [a noncitizen's] commission of a fraud and deceit crime on a specific occasion." *Pierre v. Holder*, 588 F.3d 767, 773 (2d Cir. 2009). The loss "must be tied to the specific counts covered by the conviction." *Masoud v. Holder*, 487 F. App'x 633, 634 (2d Cir. 2012) (summary order).  (setting forth deportation consequences of wire fraud conviction). If removed, petitioner will lose his status as a permanent resident. The threat of deportation looms as petitioner is currently in the midst of removal proceedings in immigration court, with his next hearing currently scheduled for [date].  A favorable outcome of his petition here will redress his injury as it will vacate his criminal conviction in its entirety. *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) ("[T]he coram nobis writ allows a court to vacate its judgments . . . .").

For these reasons, petitioner satisfies the case or controversy requirement under Article III and the third coram nobis element is met.

## D. Error of Fundamental Character

The "fundamental error requirement" can be satisfied where a petitioner shows he received ineffective assistance of counsel, as he asserts here. *Kwan*, 407 F.3d at 1014. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth the well-established two-part test to determine whether trial counsel provided ineffective assistance. First, petitioner must show that trial counsel's performance was deficient. Id. at 687. Second, petitioner must show counsel's deficient performance was prejudicial to the outcome of his case. Id. Each of these prongs is addressed below.

### 1. Deficient Performance

Under the first Strickland prong, the court asks, "whether counsel's representation 'fell below an objective standard of reasonableness.'" *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 688). This "objective standard of reasonableness" is 'linked to the practice and expectations of the legal community," therefore the "measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. When immigration issues are at play, professional norms require counsel to "advise her client regarding the risk of deportation." Id. at 367. This standard exists because of the severity of the consequences: "The severity of deportation-the equivalent of banishment or exile-only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." Id. at 373-74 (citation and quotation marks omitted).

"[W]here the law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty." *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (citing *Padilla*, 559 U.S. at 368-69). "Where the immigration statute or controlling case law expressly identifies the crime of conviction as a ground for removal, 'the deportation consequence is truly clear.'" Id. (quoting *Padilla*, 559 U.S. at 369). In *Rodriguez-Vega*, for example, "the immigration statute expressly identifie[d] *Rodriguez-Vega's* conviction as ground for removal[,]" therefore the law was sufficiently clear and "counsel was required to advise [the defendant] that her conviction rendered her removal virtually certain, or words to that effect." Id. (citing 8 U.S.C. §§ 1101(a)(43)(N), 1227(a)(2)(A)(iii)). The

same was true in Padilla. See 559 U.S. at 368-69 (citing 8 U.S.C. § 1227(a)(2)(B)(i) and explaining "*Padilla's* counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute . . . .").

Here, as in *Rodriguez-Vega* and *Padilla*, the deportation consequences of petitioner's conviction are made express in the applicable statutes. See 8 U.S.C. § 1101(a)(43)(B) (listing trafficking in controlled substance as "aggravated felony"); id. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); id. § 1227 (a)(2)(B)(i) ("Any alien . . . convicted of a violation of . . . any law . . . relating to a controlled substance . . . is deportable."); (listing basis for deportation); Therefore, it was trial counsel's duty to explain to petitioner that his guilty plea, and subsequent conviction, made it a "virtual certainly" he would be deported.

Petitioner alleges his trial attorney "did not even so much as inquire as to his immigration status, let alone advise him of the possibility of deportation and exclusion." Petitioner avers he did not disclose his immigration status because he did not know it was relevant to the proceedings. He alleges that although the court did advise him during the plea colloquy this generic advisement did not obviate counsel of the duty to warn him of the certainty of deportation caused by his guilty plea and conviction. Moreover, petitioner argues his affirmative response to the court's advisement was akin to a mere unwitting nod in order to quickly resolve his case and not based on a fully informed decision after consultation with counsel; had he truly known the collateral consequences of his plea, he would have never agreed to the plea offer at all. Mr. Robinson had an affirmative duty to advise petitioner that a guilty plea would render his deportation "virtually certain," and Mr. Robinson did not provide such an advisement. In this respect, Mr. Robinson's performance fell below the objective standard of reasonableness required here and therefore was deficient.

Petitioner was compelled and pressured to plead guilty under duress and defrauded. Due to serious deprivation of liberty and detrimental impact of oppressive per-trial incarceration without bond. Maximizing anxiety and concerns which limited and impaired Petitioner's defense.[2] Hindered ability to gather evidence, contact witnesses or otherwise prepare Petitioner's defense.[3] Disregarding Petitioner's assertions of substantial constitutional rights and due process (e.g. effective assistance of counsel,

---

[2]    U.S. v. Ewell, 383 U.S. at 120; Smith v. Hooey, 393 U.S. 374, 377-378 (1969); Klopfer v. North Carolina, 386 U.S. 213, 221-222 (1967)

[3]    See Barker v. Wingo, 470 U.S. 514 (1972) N.35

speedy trial rights, right to a bond...etc).  Deprived of substantial statutory rights, deliberate and intentional prosecutorial delays, continuances granted seemingly *Ex Parte*, to gain some tactical advantage or simply to harass.[4]  Represented by incompetent counsel who would not litigate on Petitioner's behalf, with the law seemingly stacked against Petitioner and completely prejudiced compelled Petitioner to plea guilty under duress and was completely prejudicial to his case, "reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial.[5]

    2. Prejudice

To satisfy Strickland's prejudice prong, petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rodriguez-Vega*, 797 F.3d at 788 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability' is a standard of proof 'sufficient to undermine confidence in the outcome' and is 'somewhat lower' than a preponderance of the evidence." Id. (quoting *Strickland*, 466 U.S. at 694). "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. "Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that 'but for counsel's errors, petitioner would either have gone to trial or received a better plea bargain.'" *Rodriguez-Vega*, 797 F.3d at 788 (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)).

Petitioner avers that had he been properly advised of the ramifications of his plea, he would have attempted to negotiate a plea deal that avoided deportation consequences; if such a deal could not be reached, he would have gone to trial. In support of the proposition that a better plea deal could have been fashioned at the time, and is not merely a figment of the imagination engaged in hopeful hindsight, ~~petitioner offers the position of his immigration counsel~~, that apart from pleading to a wire fraud offense, petitioner could have possibly avoided deportation if he had pled to a lesser misdemeanor offense that was not a wire fraud or negotiated the amount of loss which would not be aggravated felony. (conveying advice from immigration counsel regarding alternative plea agreement possibilities). While these lesser offenses might still have

_____

4   U.S. v. Marion, 404 U.S. 307, 325 (1971); Pollard v. U.S., 352 U.S. 354, 361 (1957)
5   Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2D 203 (1985)

subjected petitioner to removability, they might also have made him eligible to apply for cancellation of removal because they are not classified as aggravated felonies.

Nonetheless, petitioner can still "demonstrate[] prejudice by showing a reasonable probability that, even in the absence of a more favorable plea agreement, []he would have gone to trial." *Rodriguez-Vega*, 797 F.3d at 789. As the court in Rodriguez-Vega explains, "It is often reasonable for a non-citizen facing nearly automatic removal to turn down a plea and go to trial risking a longer prison term, rather than to plead guilty to an offense rendering h[is] removal virtually certain." Id.; *Padilla*, 559 U.S. at 368 ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (alteration and citation omitted)).

Here, petitioner avers without equivocation that remaining in the United States is his paramount concern, and he would have expressed this concern more emphatically at the time he pled guilty had he known the removal consequences of his plea. Petitioner declares that if his "attorney would have told [him] of the [removal] consequences, [he] would not have plead to the charges. Instead, [he] would have . . . insisted on trial." Petitioner "did not retain or consult an immigration attorney . . . because [he] was not aware that [his] plea could impact [his] immigration status." His personal circumstances at the time of his plea and sentencing are consistent with his position that he placed a high priority on maintaining his lawful status in this country. As noted above, in 1981, at eight years old, he had come to the United States with his parents and two sisters; in [date] he had obtained status as a Lawful Temporary Resident, and in [date] he obtained Legal Permanent Resident status; he has lived in the United since his initial entry. Petitioner's parents and one of his sisters are now residents in the United States, and he completed his primary and secondary education in the United States.

Given these circumstances petitioner's statements that "[t]he United States is the only home [he] ha[s] known since [he] was eight years old" and that "everything [] is here in the U.S.,", do not read as hyperbole. Petitioner's allegiance to his family and commitment to remaining in the United States, while at all relevant times unaware of the risk of deportation, are underscored by his unmitigated commitment to supporting his family even as these proceedings and the immigration matter remain pending. Petitioner has established that absent his trial counsel's deficient performance there was a reasonable probability he would have taken his case to trial if he could not secure a plea deal that protected him against deportation.

12

Other ~~sister~~ courts have reached the same conclusion on similar facts. In *Robles-Adame v. United States*, for instance, in considering the prejudice prong of the *Strickland* test in reviewing a § 2255 petition, the court found the petitioner in that case had demonstrated prejudice by showing a reasonable probability of proceeding to trial despite a more favorable plea deal. No. 3:15-CR-01801-GPC-1, 2017 U.S. Dist. LEXIS 87556, 2017 WL 2465017, at *4 (S.D. Cal. June 7, 2017). In doing so, the court weighed the fact the petitioner was only twenty years old when "he pled guilty to an offense rendering his removal virtually certain[,]" that his "life [was] in the United States, not Mexico[,]" his family, including his girlfriend and child, resided in the United States, and he had attended middle school and high school in the United States. Id. These factors led the court to conclude "[p]etitioner had much to lose from removal and more incentive to reasonably risk going to trial." Id. (citing *Rodriguez-Vega*, 797 F.3d at 789 ("A young lawful permanent resident may rationally risk a far greater sentence for an opportunity to avoid lifetime separation from h[is] family and the country in which they reside.")).

Finally, the court may also find "prejudice where a non-citizen demonstrates clearly that []he placed a 'particular emphasis' on the immigration consequence of a plea in deciding whether or not to accept it." *Rodriguez-Vega*, 797 F.3d at 789 (quoting *Kwan*, 407 F.3d at 1017-18)). A petitioner's inquiries regarding deportation consequences during plea discussions with counsel can demonstrate the "particular emphasis" contemplated by this test, see id. at 789-90 (citing *Kwan*, 407 F.3d at 1017), but the absence of evidence showing such focused discussions here is not fatal to petitioner's case given that, as ~~the court has found~~, counsel did not inform petitioner of the ramifications of his plea and petitioner was ignorant of the great risks of his deportation. Where a petitioner has an extensive personal history in, and substantial familial ties to, the United States, and counsel fails to advise him those ties are virtually certain to be severed upon entry of a guilty plea, petitioner should not be penalized retroactively for failing to inquire about the severity of a risk unknown to him. See id. (citing *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012) ("We have . . . found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.") (alteration in Rodriguez-Vega). This is particularly so when there is nothing in the record indicating petitioner should have been alert to the high risk of removal and his need to express his concerns at that time. Compare Plea ~~Agreement~~ (containing no immigration provision), with *Rodriguez-Vega*, 797 F.3d at

13

785 (involving plea agreement with provision entitled "Immigration Consequences"). In sum, that petitioner did not specifically inquire about the removal consequences of his plea does not undermine a finding of prejudice here.

### 3. Summary

Petitioner satisfies the two-part Strickland test by showing trial counsel's performance was deficient, and but for that deficient performance petitioner would have proceeded to trial assuming he could not have obtained a better plea deal. Accordingly, ~~the court finds~~ the final element of the coram nobis test is satisfied because trial counsel's error here was of a fundamental nature.

### E. Need for Evidentiary Hearing

Petitioner requests an evidentiary hearing though an evidentiary hearing is not warranted in this matter as the current record is sufficiently clear to support the findings, all create an expansive record sufficient to justify relief. Where the record provides sufficient justification for the court to reach a determination, an evidentiary hearing is not required. See *Rodriguez-Vega*, 797 F.3d at 792 (holding district court did not abuse discretion in failing to conduct evidentiary hearing because record provided adequate basis to decide ineffective performance and prejudice inquiries); see *also United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981) (coram nobis determination without hearing requires "files and records of the case [that] conclusively show that the petitioner is entitled to [] relief"). This conclusion also takes account of the government's failure to oppose the petition despite being ordered to do so. See ECF No. 106 (minute order directing government to respond to petition within fourteen days); ECF No. 107 (petitioner's reply brief noting government's failure to respond

## IV. CONCLUSION

For the reasons discussed, the petitioner asserts that he has satisfied his burden to obtain the coram nobis relief he seeks. Accordingly, petition asks for writ of error coram nobis, be GRANTED and conviction be VACATED.

Respectfully Submitted,

DATE: December 20, 2024

RAWLE GERARD SUITE

A#
555 GEO DRIVE
PHILIPSBURG, PA 16866

### III  POLICY GROUNDS

As part of the record filed on March 16th, 2018, Mr. Robinson

draft was submitted after conducting a 19 Month independent review of the true nature and circumstances surrounding this case. Counsel raised a number of salient points that go to the heart of this case, which should not be ignored, (Document 117, page 35-39 Page ID #862).  First, in regard to policy grounds counsel stated as follows "in certain circumstances especially where applicable guidelines is the product of policies and empirical study of the sentencing commission, a sentence court can disregard the guidelines on public policy grounds and need not determine its application to an individual is "unjust"

In addition counsel Robinson went on to state., "as to Suite, "This court should reject the fraud guideline on both grounds. So, set forth in his position paper Mr. Robinson stated as follows,

1.  PSR overstates danger to community.

2.  Mr. Suite and his business verticals had all the earmarks and overhead of a legally functioning business.

3.  In the parlance of our trade, this was not a straight rip-off

4.  It seems clear that Mr. Suite, had a subjective belief, they were doing what they could do to run a business and make a profit

5.  Mr. Suite accepted responsibility.

6.  The honest view of what Mr. Suite did makes no sense, if he truly set out to steal the amount of money that drives the 16 level upward adjustment in the advisory guidelines. It makes less sense when the other specific offense characteristics are stacked up in rote fashion to increase advisory sentence to upward of 10 years in prison.

7.  To sentence Mr. Suite to the recommended guideline would be to ignore who he is and how he did this crime.

memorandum to the Bureau of Prisons providing guidelines for prioritization of inmates being considered for release to Home Confinement. Over time it became apparent that those guidelines were too restricting and many inmates who should have been released under the CARES Act, languished in prison; many of whom caught COVID and died. In 2021 Attorney General Merrick Garland provided new and updated guidelines for prioritizing the release of inmates under CARES Act.

Mr. Rawle Gerard Suite qualifies for release to home confinement under the CARES Act as follows:

1. Mr. Rawle Gerard Suite has served over 50% of his sentence;
2. Mr. Rawle Gerard Suite is a LOW risk for recidivism;
3. Mr. Rawle Gerard Suite is Non-Violent;
4. Mr. Rawle Gerard Suite's offense is not Terrorism related;
5. Mr. Rawle Gerard Suite has not received a disciplinary infraction within the past 12 months;
6. Mr. Rawle Gerard Suite's instant offense is not gang related;
7. Mr. Rawle Gerard Suite has a verifiable release plan;
8. Mr. Rawle Gerard Suite has a verifiable release address;
9. Mr. Rawle Gerard Suite has family support available upon release;
10. Mr. Rawle Gerard Suite has completed rehabilitative programming while incarcerated;
11. Mr. Rawle Gerard Suite has serious medical conditions, which elevates his risk to the COVID-19 virus;
12. Mr. Rawle Gerard Suite does not have a Sex Offense.

<u>RELEASE PLAN</u>

Petitioner, upon his release, will live with his son Anthony Suite, Connie Suite (Wife) and his 2 Grandsons located at 3511 Fela Ave. Long Beach, CA 90808. Petitioner's son works for a staffing company and will have no problem placing Petitioner. Petitioner can begin a 10-day quarantine period immediately, so as not to be a danger to the health of any person within his community.

Petitioner will abide by any and all National, State and Local ordinances in California which concern the COVID-19 virus to help contain and eliminate the pandemic.

Petitioner's financial needs will be accommodated through employment.

Additional Factors for Consideration:

<u>MR. SUITE'S MEDICAL CONDITIONS WARRANT GRANTING</u>
<u>THIS CARES ACT / HOME CONFINEMENT</u>

Mr. Suite argues that he suffers from pre-diabetes, stage 2 hypertension, obesity (34.9), high cholesterol, dental infection and enlarged prostate. Placing him at high risk for severe illness if he contracts COVID. He also argues that he suffers from the long-term effects of an earlier COVID infection.

Date: 05-10-23

_____
Rawle Gerard Suite
Reg. No. 73499-112

# Attachment 1

Department Of Homeland Security
Enforcement And Removal Operations
Deportation Officer
114 8Th Street
Philiadelphia, pa 19107

DENIED

RE: Parole Request:

I Rawle Gerard Suite (Herein "Petitioner" ), No.A018-139-760 in
removal proceedings confined in a private immigration prison of
DHS?ICE located in Moshannon Valley Processing Center, philisburg
PA for over six months hereby, humbly and respectfully pray for
parole based on humanitarean reasons or significant public benefi
8 U.S.C. Sec 1182(d)(5)(A). 8C.F.R, Sec  212.5 the applicable
statutory and regulatory provisions provides (DHS)department of
Homeland Security with jurisdiction and descretion.

Petitioner herein was brought to the United States when he was
only eight years old, His adopted Country and or Aculteration is
here in the in the U.S. for over a half a century thus, it is the
only home he has ever known. The record clearly demonstrates -
petitioner is eligible for and should be granted parole because
he has strong ties to the community and has had minimal contact
with the criminal justice system. Petitioner is commitedto
pursuing his case in immigration court and fighting for the life
he has built in the U.S. for over five decades.P_etitioner is
approaching 64 years of age and has paid his debt in full 7years"
for a non violent crime whereby, petioner is challenging his open
plea that has triggered immigration consequencesas. Petitioner
has an open complaint no. 2:23-cv-10886-GHW_SHK IN NINTH CIRCUIT
and is awaiting cas file no. from the 3rd Circuit mandamus
Motion Challenging his conviction and or the Open Plea, Thus
seeks parole to fight his case on a level playing feild, etc.
What should be recognized is petitioner has beed a homeowner,
taxpayer, Business Owne

PAROLE REQUEST CONT:

PAGE 2


Taxpayer, Business Owner  and a lawful permanent resident for over 56 years, Both of his parents became citizens of this great country and petitioner brlieves he is a dirivative citizen by virtue of his mother's application submitted when he was under eighteenth years old. (Name: Claudia Rennes Suite' ss# is 099 -44-2807.) In addition petitioner has three productive adult Children that have all taken degrees and are all above 30 years of age and all citizens of the U.S., Lastly petioner also has two GRANDKIDS THAT ARE ABOUT TO ENTER High School, something petition er is desirous of not missing. One of his grandkids recently - became a valedictorian, A Student who has the highest grades and rank, The record also reflects at sentencing petitioner had a full gallery of strongsupport from the community, family and friends. moreover, THE ENTIRETY OF PETITIONER"S FAMILY ARE Citizens and thus, petitioner has no relatives in his native country notating petitioner last visit to Trinidad and Tobago was 55 years ago.

## II. HUMANITAREAN

Petitioner is currently diagnosed with Stage II_III - Hypertension, (A severe reading) HIGH Cholesterol, Pre Diabetes. Lipoma, enlarged prostate, late osteoperosis, sciatica (pain shooting down left leg.) poor circulation resulting in muscle spasms, (where the whole body shuts down and petitioner is unab;l to move.) , dizzyness due to loss of hearing in his left ear excarcebated by various pills he is on. In addition petitioner

PAROLE REQUEST:
PAGE 3

Suffers from Sleep Apnea, A BMI over 35 (Per CDC Guidelines Is very dangerous.) Notwithstanding Dental Issues such as Abysess Pain,whereby infected tooth is treated with otc aspirin occassion ally, UnfortunatelyMoshannon Valley cannot address underlying - dental issues due to A dental department that is closed as there is no Dentist available. given petitiioner's age, medical vulnera bilities and declining cognitive (In which he is being treated with psyche meds.) if deported petitioner would be dead in 30 day (s) with no one to bury him. economic harm is present as pettitti oner would not be able to afford the medicine nescessary to - combat his multiple comorbidities. the record corroberates from the "american Colledge Of Cardiology" Brought in by FCI Berlin, NH..) that petititioner is a high risk using there cocnclusionary mathematical assessment an estimator and or a risk calculator used by the cardiology colledge. Petititoner preays DHS does not turn a blind eye and objects to any future delays as the record is complete, to the extent more corroberation is needed evidence clearly shows FCI Berlin N.H. UPGRADED PETITITIONER TO A LEVEL @ 2 andas such had to move petitiioner to FT.Dix New Jersey in order to obtain medical care. FT. Dix failed to provide or ensure the medical carethus petitioner asserted his rights under the first, eight and fourteenth amendment under a civil bevins - complaint currently pending in the ninth circuit  seeking relief (See file no. 2:23-cv-10886-GHW_SHK.) In addition to a mandamus challenge to his open plea and or conviction pending in the 3rd Cir.

CONTINUED DETENTION WITHOUT

PAROLE REQUEST:
page 4.

III.   CONTINUED DETENTION WITHOUT
A BOND HEARING VIOLATES THE
DUE PROCESS CLAUSE" PROCEDURAL
SAFEGUARDS LLOKS AT THE FOLLOWING;

1. Legal Representation; Upon arrival to Moshannon Valley -
Processing Center located in phillisburg, Pa petitioner faced a
defective NTA and outrageous delays for no good reason.that has
resulted in the six month threshold for prolonged dention without
A Bond/Parole hearing. Sitting tall in the saddle petitioner -
lawyered up with private Attorney Carlos Duque' who after
collecting retainer was allowed to withdraw before doing any work
and or making any inquiry's, Basically was allowed to kepp retain
er without completing any investigation and or work, Petitioner
has spent countless hours seeking pro-bono assistance to no -
avail. Today Petitioner still seeks Justice, fairness and at this
juncture Bond/parole based on hereto attached motions and or
evidence.

2. Not A Flight Risk or Danger The Community; The primary
consideration for parole and or bond under 236(c) is whether
petitioner poses a flight risk or a danger to the community. The
evidence and record clearly demonstrates petitioner is not a
flight risk by virtue of strong ties to the community spanning
40+ years, employment. and over a dozen declarations on file at
the district court that speaks to petitioner's good moral chracte
(r) and lack of criminal history  moreover the record also shows
petitioner also participated in the community with food drives
demonstrating a charitable nature that the district court conside
red for

PAROLE REQUEST:
PAGE 5.

Considered for departure and or variance in there tentative

at sentencing notwithstanding coaching young kids in the communit

[y] since 1990.

3. <u>Eligible For Relief:</u> Petitioner's Mother became a citizen in

December 1980, It is petitioner's belief that the application

was submitted and filed when he was under 18 years of age thus,

qualifying hum as a dirivative citizenship.

4.  <u>Evidence Of Hardship</u>: Petititoner submitted a I_589 Asylum

claim for withholding of removal under the convention against

torture based on the fear of future persecution and a different

part of CAT' looking to economic harmwhere petitioner would not

be able to afford medical and or psychological treatment where

the underlying medical vulnerabilities constitutes fear of tortur

[e] , physical harm and mental anquish thus, seeking protection

from coercive medical and or psychological treatment .

5. <u>Petitioner has demonstrated compliance with immigration laws</u>

by pointing to the record. First the criminal record corroberates

and validates petitioner has attended all scheduled hearings

including the immigration courts thus, has been in compliance.

6. <u>Release on Bond, or parole</u>: Petitionerdetained pursuant to

8 U.S.C. Sec. 1226 (a) and or (c) may be released on conditional

parole. In addition under 1226(c) detention may raise constituion

[al] concerns if detention becomes unreasonably prolonged;the

inquiry is fact sensitive. Chavez - Alverez v. Warden york county

prison, 783 F.3d 469-474(3d Cir.2015). here the court noted after

six months detention , the burden to [petitioner's] liberties

outweighed any justification for using presumptions to detain

him without bond to further the goals

PAROLE REQUEST:
PAGE 6.

USING PRESUMPTIONS TO DETAIN HIM WITHOUT BONDTO FURTHER THE GOALS
OF THE STATUE' Id. at 478. in Leslie v. Attorney General of the
U.S.., 678 f.3d 265, 271 (3d Cir. 2012), The Third Ciruit held
that voluntary pursuit of bona fide legal challenges to removal
should not render the corresponding increase in time of the
detention reasonable because this approach would punish a petitio
ner for pursuing applicable legal remedies. [See Attachment of
motions filed in immigration court that seeks release from
custody or bond hearing on the basis that pre-removal order
detention by ICE , SINCE January 12th, 2024 is unresonably prolon
ged while the courts may disagreepetioner has demonstrated in
part that he will be able to demonstrate that the equities will
support a cancellation of removal.petitioner is hogtied to to
unfairness and seeks a change of venue because his aattorney
practices in california while venue is in PA REMINDING PETIONER
has filed to re-open  on Post Conviction Relief, where he
expects t prevail on issues within his case where his attorney
was ineffective as the choices made by his attorney clearly
created the result that created this current situation.
In Conclusion petioner humbly and respectfully request
DHS?ICE conduct an indivualized assessment to determine whether
detention is nescessary based on factors such as fkight risk,
danger and likelihood of appearing for immigration proceedings.
Petitioner prays DHS would not not undermine human dignity and
compassion not discounting or turning a blind eye to alternatives
to detention  such as community based supervision, electronic
monitorin

PAROLE REQUEST:
PAGE 7.

Electoring Monitoring and case management programs, for individuals like petitioner that do not pose a flight risk or danger to society. Thus, Petitioner request DHS /ICE to ensure due process protections which GUARANTEES all individuals subject to detention under sec. 236(c) the right to a prombt bond hearing and or parole., in the prioritization of fairness, due process, and human rights petitioner urges the reconsideration of mandatory detentio (n) under 236(c) of the immigration and Nationality Act. For the foregoing reasons, DHS/ICE GRANT PAROLE.

Dated July 10th, 2024                      RESPECTFULLY

                                           --------------

# B

NOTE: ~~GERMAN SANTOS~~ TO ASSIST THE COURT

UNITED STATES DISTRICT COURT
IN REMOVAL /CUSTODY PROCEEDINGS

IN THE MATTER OF

SUITE, RAWLE GERARD                    FILE NO: A018 139 760
                PETITIONER            SUBJECT NO: 734 99 112

V.

CHRISTOPHER J. LAROSE, WARDEN OF MOSHANNON VALLEY
PROCESSING CENTER,

## I.
## ISSUES PRESENTED

A. Regardless OF PETITIONER'S Statue of Dention, Petitioner is Prolonged detention without a Bond hearing violates due Process Clause of the Fifth Amendment by depriving him of Liberty without due Process. Liberty IS A Fundamental right, and its deprivation can only be — Justified by a compelling government interest. See Exhibit A, Exhibit B, and Attachment 1

B. ALLEGATIONS ONE THROUGH THREE IS CONCEEDED AS TRUE HOWEVER, ALLEGATIONS NO 4. PETITIONER OBJECTS TO AGGRAVATED FELONY CITING THE EVIDENCE PRESENTED BY THE GOVERNMENT IS A PREDICATE UNDER 18 U.S.C. § 1343. AND THE CHARGES BROUGHT UNDER THE ACT AND TITLE 18 1343 DOES NOT INCLUDE ATTEMPT OFFENSES. AS 18 U.S.C. § 1343 CATEGORICALLY REPRESENTS AN ATTEMPT CRIME, DICTATED IN THE STATUE ITSELF INA § 101(a)(43)(M)(i) - AT NO TIME HAS A STATUE RELATING TO REMOVABILITY AUTHORIZED IMMIGRATION CONSEQUENCES IMPOSED OVER ATTEMPT CRIMES. CONGRESS HAS BEEN CLEAR, IT IS AWARE OF HOW TO INCLUDE ATTEMPT CRIMES, AS SUCH IT IS NOT SUBJECT TO DISCRETION - SEE EXHIBT (B-2)

DIRIVATIVE CITIZENSHIP

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT

In The Matter of:
Rawle Gerard Suite

File No: A 018 139 760

## Evidence To Be Considered In The Removal Hearing

Comes now, Petitioner Rawle Gerard Suite, in the above style motion requesting that, the evidence raised in this motion be considered during my removal hearing scheduled for March 18 th 2024. JUNE
The evidence is as follows:

AS it relates to the evidence presented by the government is a predicate under 18 USC § 1343, it has been asserted that the subjected predicate is an aggravated felony. The government also asserts that the subjected predicate violate 101(a)(43)(M), and 237(a)(2)(A)(iii), of the Act, also known as 1101(a)(43)(M), and 1227(a)(2)(A)(iii), of Title 18.
Please be advised that the charges brought under the Act and Title 18, does not include attempt offenses, as 18 USC § 1343 categorically represents an attempt crime as dictated in the statute itself.
The subject statute provides:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for the purpose of obtaining money or property by means of fraud or fraudulent prestenses, representations, or promises , transmits, or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sound for the purpose of executing such scheme or artifice, shall be fined under this title, or imprisoned not more than 20 years, or both....

The offense for which I am charged under the Act 237(a)(2)(A)(iii),
<u>aggravated felony</u>, in which the government raises the issue of a
financial loss that exceeded $10,000:00 , before establishing whether
Congress authorized immigration courts the authorization to impose
immigration consequences. 237(a)(2)(A)(iii), of the Act provides:
Any time after admission, you have been convicted of any aggravated
felony, as defined in section 101(a)(43)(M), of the Act, a law
relating to an offense that (i) involves fraud or deceit in which
the loss to the victims exceeds $10,000:00, or (ii), is described in
The Internal Revenue Code of 1986, section 7201 (relating to tax
evasion) in which the revenue loss to the Government exceeds $10,000:00...
Please Note: The statutedoes not mention the word attempt, and
<u>prior to considering the loss amount statutorily the government as</u>
<u>a matter of law must establish jurisdiction of the predicate which</u>
<u>it is pursuant to impsing immigration consequences, and has introduced</u>
<u>the predicate for the sole purpose of misleading the Court in rendering</u>
<u>an uninformed unjust ruling, based on evidence not authorized by</u>
<u>Congress</u>. In addition the Act goes on to specifically name the attempt
predicates Congress authorized the imposition of immigration consequences.
This is well supported by 8 USC § 1182(a)(C), and (D), however (A), and
(B), unambiguously confirms the exception as to what predicates
Congress enacted as the exception to prior convictions it authorized
immigration courts , the authority to impose immigration consequences
and even the that eception Congress enacted.
<u>When the legislaters intent is made known judicial inquiry is</u>
<u>complete, and regardless to how serious a problem an agency</u>
<u>attempts to correct however it may not act in a manner contrary</u>
<u>to that what Congress has enacted into law.</u>

The offense of 18 USC § 1343, categorically is an attempt crime based on the fact that it is divisible through the use of the conjunction "or", which has always been used in statutes to afirmatively identify alternative means of commiting the offense. The word "or" is used 10 times in the subjected statute. The government only need to prove:

"An intent to devise any scheme to obtain money, by means of false pretense combined with a transmission pursuant to the execution of the said scheme, which could be as little as a call to a friend requesting a pair of eye glasses, is more than enough to find a defendant guilty of 18 USC § 1343 because it constitutes a step towards the commission of the crime. The individual eventhough he might not have any knowledge of the scheme can also be found guilty because his prior knowledge is not a required element. ( see United States v. Calvert, 523 F. 2d 895, 1 Federal Rule Evidence Service, CBC 41, 1975 US App. 13005 (8 th Cir.1975), 424 US 911, 96 S. Ct.  1106, 47 L. Ed. 2d. 314, 1976 US LEXIS 477 (1976). All that is required is a scheme to defraud and interstate phone call made in the furtherance of the fraud. see United States v. Wise, 553 F. 2d. 1173, 1977 US App. LEXIS 13667 (8 th Cir. 1977), In support of it being an inchoate offense see United States v. Gordon, 780 F. 2d. 1165, 19 Federal Rule Evidence Service CBC 1575, 1986 US App.  LEXIS 21916 (5 th Cir. 1986), 479 US 963, 107 S. Ct. 462, 93 L. Ed. 2d. 408, 1986 US LEXIS 4789 (1986), and Bridge v. Phoenix Bond & Indem. Co. , 553 US, 639, 128 S. Ct. 2131, 170 L. Ed. 2d  1012, 21 FL. Weekly Fed. S 295 2008 LEXIS 4703 (2008)

I respectfully request that this Honorable Court consider, the evidence presented in this motion and in doing so also consider a bond hearing due to the evidence presented.

I Rawle Gerard Suite, do hereby swear the information in this motion to be true under the penalty of perjury and that a true and correct copy of the foregoing has been placed in the mail system of the facility in which I am confined to be mailed to the Assistant Chief Counsel, this 14 th day of March 2024.

X: _____

Rawle Gerard Suite
A018 139 760
Moshannon Valley Processing Ctr.
555 Geo Drive
Phillipsburg, Pa. 16866

EXHIBIT B. 2...

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT, ELIZABETH, NEW JERSEY

                                    DETAINED
In The Matter of:               File No. A018 139 760
Rawle Gerard Suite


                    Motion To Reconsider


Comes now, Rawle Gerard Suite, (pro-se Petitioner), requesting that
this Honorable Court reconsider it's ruling on March 18, 2024 and
in support states:

Mr. Suite was previously convicted of the violation of 18 USC § 1343
and sentenced accordingly.

Mr. Suite was charged by the DHS/ICE, of the violation of 8 INA §
237(a)(2)(A)(iii), which provides:

"Any time after admission, you have been convicted of any aggravated
felony, as defined in section 101(a)(43)(M), of the Act, a law relating
to an offense that (i) involves fraud or deceit in which the loss
to the victims exceeds $10,000:00, or (ii)is described in The Internal
Revenue Code of 1986..."

Please note the plain text of the Act as charged by the government
DHS/ICE, in the immigration proceedings does not mention inchoate
crimes like attempt, conspiracy, solicitation, and or aid and abetting
however the same cannot be said as it relates to the predicate
offense to which Mr. Suite was convicted which is now being used
against him substantively in this immigration proceedings.

The predicate prior conviction of interest is 18 USc § 1343, which
provides:

"Whoever, having devised or intending to devise any scheme or

6

NOT completely FORMED OR DEVELOPED.
partly IN existence or operation:
Imperfectly informed or FORMULATED.



artifice to defraud, or for obtaining money or property by means of
false or fraudulent pretenses, representations, or promises, transmits
or causes to be transmitted by means of wire, radio, or television
communication in interstate or foreign commerce, any writings, signs,
signals, pictures, or sounds for the purpose of executing such scheme
or artifice , shall be fined under this title or imprisoned not more
than 20 years, or both....."
<u>18 USC § 1343 Fraud by wire, radio, or television</u>


Please note the plain text of the Statute at issue  compared to the
text of the Acts as charged by the DHS/ICE, pursuant to removal
emcompasses more criminal conduct than that which is required in the
Act as charged, to include inchoate crimes, more specifically conspire,
plan, scheme, devise, any scheme.
In the enactment of 8 INA § 237(a)(2)(A)(iii), Congress did not
authorize the imposition of immigration consequences based on a plan,
scheme, conspiracy and or the devising of such fraud, as such respectfully
the ruling by the Court on March 18, 2024 was in error, and the
government fail to meet it's burden of establishing removability
as a matter of law.
The Supreme Court held in Kisor v. Wilkie, that "judges should apply
diference to these agency interpretations (like the Sentencing
Guidelines), only when regulation (meaning law and or statute) at
issue "is genuinely ambiguous." Court's prior rulings and or BIA
prior rulings are inclusive as agency interpretations.
This Honorable Court as is any other court is bond by statute and
not agency interpretations, the Act is unambiguous in it's exclusion
of inchoate crimes, which is binding on the Court as a matter of law.
Regardless to how important an issue a court attempts to correct
however it may not act in a manner contrary to that what Congress
has enacted into law. Where the in this case Act is unambiguous
judicial inquiry is complete, as such any response of DHS/ICE lacks
merit and should not be considered especially where the law is clear.

Accordingly, pursuant to Federal Rule of Civil Procedures 60(b)(3),(4) and (6), (3) provides:

that the court may "relieve a party or it's legal representative from a final judgment, order, or proceeding for the following reasons: (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

As previously raised Congress did not authorize the imposition of immigration consequences on 18 USC § 1343, as it is an attemt crime better known as inchoate crime and therefore not an aggravated felony as charged by the DHS/ICE and this Honorable Court.

(4) the judgment is void.

Because Congress did not authorize the imposition of immigration consequences over 18 USC § 1343, as a matter of law the judgment ordered on March, 18, 2024 is void.

(6) any reason that justifies relief.

Because the Act as charged by the DHS/ICE and by this Honorable Court unambiguously exclude inchoate crimes, as defined in the predicate offense 18 USC § 1343, as previously mentioned, justifies relief accordingly, as a matter of law, respectfully.

As such I hereby request that this Honorable Court reconsider it's ruling on March 18, 2024, and in doing so grant this Petitioner a *Joseph* bond based on the fact that the government fail to establish *Hearing* jurisdiction as it relates to 18 USC § 1343, which was substantively relied on the the ruling of this Honorable Court on March, 18, 2024.

I Rawle Garard Suite, do hereby swear under the penalty of perjury, that the information provided in this Motion To Reconsider, to be true and that a true and correct copy of the foregoing has been placed in the mail system of the facility in which I am detained, to be mailed to the Assistant Chief Counsel, this 8 th day of April 2024.

X. _____
Rawle Garard Suite
A018 139 760
Moshannon Valley Processing Center
555 Geo Drive
Phillipsburg, PA. 16866



RAWLE GERARD SUITE
REG NO. 73499112
FDC Philadelphia
700 ARCH STREET
Philadelphia, Pa 19106

IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
EASTERN

601 Market Street
Philadelphia, Pa 19106

RECEIVED
MAY 19 2025

X-RAY
USMS

LEGAL MAIL